1   MARK GOLDROSEN, CBN 101731
    Attorney at Law
2   255 Kansas Street, Suite 340
    San Francisco, California 94103
3   TEL: (415) 565-9600
    FAX: (415) 565-9601
4   markgoldro@aol.com

5   Attorneys for Defendant
    JAZMIN ALEJANDRA CUEVAS-CAPETILLO
6

7                      UNITED STATES DISTRICT COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9                        SAN FRANCISCO VENUE

10
    UNITED STATES OF AMERICA,          )      No. 20-cr-00449-001 EMC
11                                      )
              Plaintiff,                )
12                                      )      DEFENDANT CUEVAS-CAPETILLO'S
                                        )      SENTENCING MEMORANDUM
13        vs.                           )
                                        )
14  JAZMIN ALEJANDRA CUEVAS-            )
    CAPETILLO,                          )
15                                      )
              Defendant.                )      DATE: May 5, 2022
16                                      )      TIME: 9:00 a.m.
    _____ )      DEPT: Hon. Edward M. Chen
17

18         Defendant JAZMIN ALEJANDRA CUEVAS-CAPETILLO, remorsefully appears before

19  this honorable Court for sentencing after having pled guilty to the sole count contained in the

20  Superseding Information. Ms. Cuevas-Capetillo respectfully requests that the Court sentence her to

21  time served, followed by four years of supervised release with home confinement for one year and

22  other conditions recommended in the Presentence Investigation Report (hereafter "PSR"). As

23  explained below and in the PSR, there are numerous mitigating circumstances which warrant a

24  downward variance from the applicable guideline range. Ms. Cuevas-Capetillo experienced

25  significant trauma during her childhood and youth, she was self-medicating with alcohol and cocaine

26  during the time of the offense, she has performed well on U.S. Pretrial Services supervision since

27
    DEFENDANT'S SENTENCING MEMO
28  *United States v. Jazmin Alejandra Cuevas-Capetillo*, 20cr0449-001 EMC

1  being released almost 18 months ago, she is the sold provider and caretaker for her one-year old

2  daughter, and she is the primary caretaker for her 74-year-old grandmother.

3  **I.      MS. CUEVAS-CAPETILLO'S BACKGROUND**

4      Mr. Cuevas-Capetillo, now 26 years old, was born in San Jose, California. She currently lives

5  with her daughter, mother, and maternal grandmother in Turlock. She is employed as an In Home

6  Supportive Services provider for her grandmother, who is 74 years old and suffers from both

7  diabetes and a thyroid condition, and was just diagnosed as having vulvar cancer.

8      Childhood and adolescence presented Ms. Cuevas-Capetillo with a number of challenges,

9  as outlined in the PSR, According to her mother, these traumas "stole her innocence and happiness."

10  Letter from Maria Capetillo, attached as Exhibit A.  Although Ms. Cuevas-Capetillo believes that

11  her basic needs were met when young, her mother told her that things were "rocky." PSR at ¶ 44.

12      In addition, her father was involved in criminal activity, which led to frequent absences from

13  home. When Ms. Cuevas-Capetillo was born her father was in jail and she did not meet him until

14  she was one year old. Soon thereafter her father returned to jail and he was back and forth between

15  home and jail until Ms. Cuevas-Capetillo was 10 years old. Her parents then separated, with her

16  father eventually remarrying. PSR at ¶44. When Ms. Cuevas-Capetillo was 14 years old, her father

17  committed a crime that resulted in him being sentenced to prison. After being released on parole, he

18  was deported to Mexico. Since then she has only seen father a few times. ¶ at 45.

19      Ms. Cuevas-Capetillo had great difficulty coping with her parents separation. She was

20  troubled by seeing her parents dating other people. This led her to act out in school and to have a

21  strained relationship with her mother. PSR at ¶ 47; *see also* Exhibit A (Ms. Cuevas-Capetillo

22  "suffered most the separation of her parents and the incarceration of her father throughout her

23  childhood."); Letter from Bridget Johnson, attached as Exhibit B ("At the time of her parent[s']

24  separation she struggled with having to be isolated from [our] father.").

25      Finally, when Ms. Cuevas-Capetillo was a high school senior, her cousin Daniel Capetillo,

26  who lived with her at the time, was murdered outside their home. Ms. Cuevas-Capetillo and her

27

28  DEFENDANT'S SENTENCING MEMO
    *United States v. Jazmin Alejandra Cuevas-Capetillo*, 20cr0449-001 EMC

1    cousin were very close. According to her mother, the cousin "filled the parental void she had at the

2    time." Exhibit A. Ms. Cuevas-Capetillo was devastated by the murder, which remains unsolved. To

3    cope with her emotional pain, Ms. Cuevas- Capetillo began drinking alcohol and she soon dropped

4    out of school. PSR at ¶ 48. During this time period she was convicted of driving under the influence

5    of alcohol (at age 18) and arrested for public intoxication (at age 19). *Id*. at ¶¶ 37, 39.

6         As she became a young adult, Ms. Cuevas-Capitillo worked hard to get her life back on track.

7    In 2013, she found a good job at Palace Party Events, where she performed administrative work, was

8    a personal assistant, and occasionally helped with catering. In 2014, Ms. Cuevas-Capetillo left this

9    job to work at Tesla and then returned one year later. She continued to work at Palace Party Events

10   until leaving in November 2019, with the hope of returning to school. *Id*. at ¶¶ 66-67. Her employer

11   writes favorably that Ms. Cuevas-Capetillo "was very punctual, organized, and responsible. She

12   collaborated so that the organization met customer needs and helped manage both administrative and

13   logistically the agreement process according to the objectives of the company." Letter from Juan

14   Carlos Palacios, attached as Exhibit C.

15        Sadly, after leaving her job, Ms. Cuevas-Capetillo went through a difficult period in her life.

16   She again turned to alcohol, supplemented with cocaine, as a solution for her problems. *Id*. at ¶ 60.

17   Unemployed, and impaired by substance abuse, Ms. Cuevas-Capetillo was in need of money to pay

18   her expenses. People close to her were involved in narcotics trafficking. In the past, they encouraged

19   Ms. Cuevas-Capetillo to join them in selling drugs, but she repeatedly refused. Now, in her state of

20   despair, she had a very regrettable change of heart. On February 4, 2020, Ms. Cuevas-Capetillo

21   agreed to deliver drugs to an undercover buyer. She also followed instructions to pick up drug

22   proceeds from sellers and hold them until someone took them from her. In addition, she occasionally

23   passed on messages  to drug  distributors.

24        Fortunately, Ms. Cuevas-Capetillo's participation in the drug conspiracy was short lived. On

25   July 1, 2020, the local police arrested a drug distributor from whom she had picked up money. This

26   arrest caused Ms. Cuevas-Capetillo to reevaluate her decision to become involved in narcotics

27

28   DEFENDANT'S SENTENCING MEMO
     *United States v. Jazmin Alejandra Cuevas-Capetillo*, 20cr0449-001 EMC

1    trafficking. Moreover, she had recently learned she was pregnant. That revelation was a strong

2    incentive to resume a law abiding life and to stop her excessive drinking and occasional drug use.

3          On November 23, 2020, Ms. Cuevas-Capetillo was arrested for her crime and released under

4    the supervision of Pretrial Services. One week later, she gave birth to her daughter, S.C. Since then,

5    Ms. Cuevas-Capetillo's primary focus has been on raising her child. According to Grandmother

6    Antonia Aguila, "Jazmin is an amazing mother to [S.C.], and she loves her very much and [S.C.]

7    loves her mom and is very close to her." Ms. Aguila does not believe that Ms. Cuevas-Capetillo

8    "would do anything to jeopardize her daughter's well-being or herself now that she is a mom."

9    Ms.Cuevas-Capetillo's "mentality [has] change[d] greatly since becoming a mother[,] her priority

10   is her daughter." Letter from Antonia Aguila, attached as Exhibit D.

11         Ms. Cuevas-Capetillo's mother has noticed the same positive development. "For Jazmin, the

12   birth of her daughter is the best thing that happened to her. Motherhood has helped her mature and

13   make better decisions for the wellbeing of her daughter and herself. She is a good mother and

14   protects her daughter a lot." Exhibit A; s*ee also* Exhibit B ("I have witnessed her remorse and

15   genuine desire to change since the birth of my niece. She has taken steps to change her current

16   situation by becoming an exemplar[y] mother despite not having adequate parental role models

17   herself.")

18         Significantly, Ms. Cuevas-Capetillo has the additional burden of being a single mother,

19   which she readily accepts. S.C.'s father and Ms. Cuevas-Capetillo separated before Savannah was

20   born. The father has not been involved in S.C.'s life and has refused to pay court-ordered child

21   support. PSR at ¶ 50.

22         It is also noteworthy that after her arrest, Ms. Cuevas-Capetillo moved from San Jose to

23   Turlock to live with her mother and grandmother. The move distanced her from people in San Jose

24   who had previously encouraged her to join the drug conspiracy. Sister Bridget Johnson notes that

25   in Turlock over the last year "she has isolated herself and only welcomed individuals that bring

26   supportive advice, foster her growth, and encourage her education into her life as well as her

27

28   DEFENDANT'S SENTENCING MEMO
     *United States v. Jazmin Alejandra Cuevas-Capetillo*, 20cr0449-001 EMC
                                         - 4 -

1   daughter[']s." Exhibit B. In addition, Ms. Cuevas-Capetillo has proven to be a "very good tenant,"

2   who maintains the property well and pays her rent on time. Letter from Alfredo Huerta, attached as

3   Exhibit E.

4          Aside from caring for her child, Ms. Cuevas-Capetillo has been productive in other ways

5   since moving to Turlock. In February 2021, she obtained employment providing in-home supportive

6   services to her grandmother. *Id*. at ¶ 65. Ms. Aguila notes that Ms. Cuevas-Capetillo is "currently

7   [her] care giver and helps . . . with [her] appointments and driving [her] to where [she] needs to go."[1]

8   *See* Exhibit D.

9          Later, in January 2022, Ms. Cuevas-Capetillo began attending Turlock Adult Education and

10  anticipates receiving her high school diploma before she is entenced. Her hope is to begin college

11  after graduating from high school. *Id*. at ¶ 63. Furthermore, Pretrial Services records indicate Ms.

12  Cuevas-Capetillo has complied with all court-ordered conditions of release. *Id.* at ¶ 5.

13         The prospect of incarceration raises two significant concerns for Ms. Cuevas-Capetillo and

14  her family. First, the father of Ms. Cuevas-Capetillo's child recently began asking her questions

15  about her criminal case. Ms. Cuevas-Capetillo is worried that he will seek custody of S.C. or attempt

16  to raise her if she is sentenced to prison. The father has been uninvolved in S.C.'s life up to now and

17  Ms. Cuevas-Capetillo does not believe he is a fit parent because of his unpredictability and lifestyle.

18  *Id*. at ¶ 50.

19         In addition, Ms. Cuevas-Capetillo's grandmother, for whom she is the primary caretaker, was

20  just diagnosed with vulvar cancer. PSR at ¶ 52. She is currently being evaluated to determine the

21  stage of her cancer and whether it is amenable to treatment. Ms. Cuevas-Capetillo is needed to assist

22  her grandmother during both the evaluation and treatment periods.

23  **II.     PLEA AGREEMENT**

24         Ms. Cuevas-Capetillo and the government entered into a written plea agreement pursuant to

25  _____

26         [1]Ms. Aguila wrote her letter before she was diagnosed with vulvar cancer. That medical
    condition has increased Ms. Cuevas-Capetillo's caretaking responsibilities.

27

28  DEFENDANT'S SENTENCING MEMO
    *United States v. Jazmin Alejandra Cuevas-Capetillo*, 20cr0449-001 EMC

1   Rules 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure. Mr. Cuevas-Capetillo

2   pled guilty to Count One of the Superseding Information, charging her with Conspiracy to Distribute

3   50 grams or more of a Mixture or Substance Containing a Detectable Amount of Methamphetamine

4   in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(viii). The sentencing guidelines

5   calculation in the plea agreement left open the question of whether Ms. Cuevas-Capetillo was

6   entitled to offense level adjustments for mitigating role (U.S.S.G. §3B1.2) and safety valve (U.S.S.G.

7   §2D1.1(b)(18)). Paragraph 7 of the plea agreement allows Ms. Cuevas-Capetillo to "to seek a

8   downward variance based on the factors set forth in 18 U.S.C. § 3553(a)."

9   **III.     PRESENTENCE INVESTIGATION REPORT (PSR)**

10   The PSR calculates Mr. Cuevas-Capetillo's total offense level to be 23 and her Criminal

11   History Category to be I. PSR at ¶¶ 34 and 38. That calculation includes adjustments downward for

12   minor role (two points) and safety valve (two points). According to the PSR, the applicable

13   guidelines provision is 46 to 57 months. *Id*. at ¶ 83. The PSR recommends that the Court vary

14   downward from that range and impose a sentence of 12 months and one day of imprisonment

15   followed by four years of supervised release. *Id*., Sent. Rec. at 1. The PSR suggests that the Court

16   consider a number of mitigating circumstances in support of its recommendation for a downward

17   variance.

18   The Court should consider Ms. Cuevas-Capetillo has dealt with significant trauma,

19   . . . her cousin was killed due to gun violence in the front of her home, and she struggled with the separation of her parents' relationship at a young age. She acted out as a child, and she began self-medicating with alcohol after her cousin's killing.

20   Additionally, she is the sole provider for her young daughter and has been performing well on U.S. Pretrial Services supervision.

21

22   *Id*. at ¶ 90. In addition, in further justifying its recommendation, the PSR notes that "the [applicable]

23   guideline range does not address Ms. Cuevas-Capetill's personal history and characteristics or her

24   time on U.S. Pretrial Services supervision." *Id*., Sent. Rec. at 2.

25   Ms. Cuevas-Capetillo agrees that a sentence below the applicable Guidelines range for

26   offense level 23 is appropriate, but believes that the mitigating circumstances justify an even greater

27

28   DEFENDANT'S SENTENCING MEMO
*United States v. Jazmin Alejandra Cuevas-Capetillo*, 20cr0449-001 EMC
- 6 -

downward variance. In addition, the defense has one objection to the PSR, as explained below.

## IV.    OBJECTION TO PSR'S FINDING THAT MS. CUEVAS-CAPETILLO'S ROLE IN THE OFFENSE WAS NOT MINIMAL

As explained in Application Note 3(C), the determination whether to apply an adjustment for lesser role in the offense is based on the totality of the circumstances and is heavily dependent on the facts of the particular case. Ms. Cuevas-Capetill has the burden of proving by a preponderance of the evidence that she had a mitigating role in the offense, *United States v. Hoac*, 990 F.2d 1099, 1105 (9th Cir. 1993). Here, both the PSR and the government take the position that Ms. Cuevas-Capetillo had a minor role in the drug conspiracy and is therefore entitled a two-level downward adjustment. The defense believes, however, that Ms. Cuevas-Capetillo's role is better described as minimal. Thus, her offense level should be reduced by four.

Application Note 3(C)(i-v) provides a non-exhaustive list of factors the Court should consider in determining whether a defendant had a mitigating role. It is undisputed that these factors weigh in favor of an adjustment under §3B1.2. Ms. Cuevas-Capetillo  did not: (1) participate in planning or organizing the criminal activity; (2) have decision-making authority or discretion in performing her tasks; or (3) have a proprietary interest in the criminal activity. Ms. Cuevas-Capeitllo was instructed to perform certain tasks over a short period of time and then paid for the work she did.

The defense differs with the PSR and the government with respect to the extent of the downward adjustment. According to Application Note 4, a minimal participant is one who is "plainly among the least culpable of those involved. . .[T]he defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." This definition of a minimal participant clearly fits Ms. Cuevas-Capetillo. Having been directed to make one drug delivery, occasionally collect drug proceeds, and deliver a few messages over a period of five months, Ms. Cuevas-Capetillo's participation was among the least culpable of those involved in the conspiracy. It was certainly less than the persons who regularly distributed drugs, the source or sources who obtained drugs and arranged for their sale, the

DEFENDANT'S SENTENCING MEMO
*United States v. Jazmin Alejandra Cuevas-Capetillo*, 20cr0449-001 EMC

persons who picked up the proceeds from her and delivered them to the sources, and the persons who participated in the conspiracy over a lengthier period of time. In addition, while Ms. Cuevas-Capetillo had knowledge of the persons with whom she had direct contact, she did not have knowledge or an understanding of the full scope and structure of the enterprise and of the activities of all other members. She was not aware of how many persons were involved in the conspiracy, what the roles of each conspirator were, the frequency with which drugs were sold, the amount of drugs that were trafficked, the original source of the drugs, or the amount of money that was made by the conspiracy. Ms. Cuevas-Capetillo's knowledge and understanding was limited to the discrete tasks she was directed to perform.

The PSR claims that Ms. Cuevas-Capetillo had knowledge of "the drug trafficking activities, more so than someone who lacks knowledge or understanding of the criminal activity" because "she was entrusted with $17,500" found in her bedroom at the time of her arrest. Addendum to PSR at 1. This argument is speculative in at least two ways. First, even though the money had an odor of narcotics, there is no evidence that Ms. Cuevas-Capetilla had been given this money to hold for the drug conspiracy. There are many other reasons why she could have had this money. It could have been money gifted or loaned to her by family members or friends involved in narcotics trafficking. Moreover, even if it had been "entrusted" to her by co-conspirators, it does not follow that she necessarily had "knowledge or understanding of the scope and structure of the enterprise and of the activities of others." Her possession of the money is not an indication she was aware of the extent and scope of the conspiracy.

**V.    MS. CUEVAS-CAPETILLO RESPECTFULLY REQUESTS THAT SHE BE SENTENCED TO TIME SERVED FOLLOWED BY FOUR YEARS OF SUPERVISED RELEASE WITH HOME CONFINEMENT FOR ONE YEAR AND OTHER CONDITIONS RECOMMENDED IN THE PSR**

In *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008), the Ninth Circuit explained that,

The overarching statutory charge for a district court is to "impose a sentence sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate

1    deterrence; to protect the public; and to provide the defendant with needed
2    educational or vocational training, medical care, or other correctional treatment. 18
     U.S.C. § 3553(a) and (a)(2).

3        All sentencing proceedings are begun by the district court calculating the applicable

4    Guidelines Range. The district court then should consider the sentencing factors set forth in section

5    3553(a) to determine if they support the sentence suggested by either of the parties. *Carty*, 520 F.3d

6    at 991. These factors include:

7        the nature and circumstances of the offense and the history and characteristics of the
         defendant; the need for the sentence imposed; the kinds of sentences available; the
8        kinds of sentence and the sentencing range established in the Guidelines; any
         pertinent policy statement issued by the Sentencing Commission; the need to avoid
9        unwarranted sentence disparities among defendants with similar records who have
         been found guilty of similar conduct; and the need to provide restitution to any
10       victims. 18 U.S.C. § 3553(a)(1)-(7).

11   *Id*.

12       Here, as identified below and in the PSR, there are a myriad of sentencing factors that support

13   the sentence requested by Ms. Cuevas-Capetillo.

14       **A.    Insignificant Prior Record**

15       Now 26 years old, Ms. Cuevas-Capetillo has an insignificant prior record of criminal activity.

16   Her only conviction was for driving under the influence of alcohol at age 18. As part of that

17   sentence, she successfully completed three years of probation. Ms. Cuevas-Capetillo's one other

18   arrest was for public intoxication at age 19. No charges were filed after that arrest.

19       **B.    Traumatic Events During Childhood and Adolescence**

20       Ms. Cuevas-Capetillo experienced several very traumatic events while growing up, as

21   explained in the PSR. Her father was in and out of jail and her parents eventually divorced. Later,

22   her father was sentenced to prison and then deported after being paroled. Finally, a cousin with

23   whom she had a very close relationship and  who lived in her home was murdered. These traumas

24   left Ms. Cuevas-Capetillo in a state of significant emotional pain.

25       **C.    Struggles with Alcohol Abuse**

26       There have been periods of time when Ms. Cuevas-Capetillo has struggled with substance

27

28   DEFENDANT'S SENTENCING MEMO
     *United States v. Jazmin Alejandra Cuevas-Capetillo*, 20cr0449-001 EMC

                                           - 9 -

1   abuse, causing impaired judgment. One such time was when she was involved in the criminal

2   activity for which she has pled guilty. Since withdrawing from the conspiracy, she has stopped all

3   drug and alcohol use. Ms. Cuevas-Capetillo also has an AA sponsor who supports who sobriety.

4          D.      **Single Mother**

5          Soon after learning of her pregnancy, Ms. Cuevas-Capetillo terminated her involvement in

6   the drug conspiracy.  Her one-year-old daughter, S.C., is now her primary focus. She also has the

7   added burden of being a single mother. S.C.'s father has been uninvolved in the daughter's life and

8   has ignored court orders to provide financial support.  Recent communications from the father,

9   however, have Ms. Cuevas-Capetillo concerned that he will try to take custody of S.C. if the Court

10   imposes a custodial sentence. It goes without saying that becoming a mother has totally changed Ms.

11   Cuevas- Capetillo focus and priorities.

12          E.      **Caretaker for 74-Year-Old Grandmother**

13          Ms. Cuevas-Capetillo is employed as the in-home services provider for her elderly

14   grandmother. She works 119 hours per month in this job, proving care at home, taking her to medical

15   appointments, and driving her wherever needed. In addition to suffering from diabetes and a thyroid

16   condition, Ms. Cuevas-Capetillo's grandmother was just diagnosed with vulvar cancer. The need for

17   Ms. Cuevas-Capetillo's help is now greater than ever. If Ms. Cuevas-Capetillo is incarcerated the

18   responsibility for caring for Ms. Aguila will fall to Ms. Cuevas-Capetillo's mother. However, the

19   mother will also be caring for S.C. and the two tasks combined will likely be overwhelming for her.

20          F.      **School**

21          At the beginning of 2022, Ms. Cuevas-Capetillo enrolled at Turlock Adult School, where she

22   is on track to obtain her high school diploma very soon. She hopes to begin college classes after

23   graduation.

24   **VI.    CONCLUSION**

25          Due to the many mitigating circumstances outlined above and in the PSR, the Court should

26   sentence Ms. Cuevas-Capetillo to time served followed by supervised release with home

27

28   DEFENDANT'S SENTENCING MEMO
     *United States v. Jazmin Alejandra Cuevas-Capetillo*, 20cr0449-001 EMC

1  confinement for one year and other conditions recommended in the PSR. Sentencing Ms. Cuevas-

2  Capetillo to additional imprisonment is not necessary to achieve the sentencing goals listed in 18

3  U.S.C. § 3553(a). The sentence requested – consisting of a federal felony conviction and all of its

4  adverse consequences, supervised release, home confinement, and other conditions – is significant

5  punishment, especially for someone like Ms. Cuevas-Capetillo, who has never had a felony

6  conviction before. Additional incarceration, which will deprive daughter S.C. of her mother and

7  grandmother Antonia Aguila of her caretaker, as well as undermine the progress Ms. Cuevas-

8  Capetillo has made on pretrial release, is not warranted.

9  DATED: April 28, 2022                          Respectfully submitted,

10

11                                               /s/ Mark Goldrosen
                                                 MARK GOLDROSEN
12                                               Attorney for Defendant
                                                 JAZMIN ALEJANDRA CUEVAS-CAPETILLO
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  DEFENDANT'S SENTENCING MEMO
    *United States v. Jazmin Alejandra Cuevas-Capetillo*, 20cr0449-001 EMC
                                    - 11 -